**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| SACHIN AMIN, Individually and on behalf of those Similarly Situated, | Case No. 4:22-cv-02845 |
| v. | |
| | Rule 23 Class Action |
| NES GLOBAL, LLC | |
| | Jury Trial Demanded |

**AMIN'S UNOPPOSED MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1.    SUMMARY.

Plaintiff Sachin Amin ("Amin"), individually and on behalf of other similarly situated workers, alleges Defendant NES Global, LLC ("NES") violated certain California state wage and hour laws (failure to pay wages under CAL. LAB. CODE §§ 510, 119, 1194.5; failure to provide compensation for missed meal and rest periods under CAL. LAB. CODE §§ 226.7, 512; waiting time penalties under CAL. LAB. CODE § 203; failure to provide accurate, itemized wage statements under CAL. LAB. CODE § 226; penalties under the California Private Attorneys General Act ("PAGA"), at CAL. LAB. CODE § 2698 *et seq.*; and violations of California's unfair competition law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.*). Specifically, Amin alleges NES failed to pay Amin and other hourly non-exempt workers: (1) overtime for hours worked over eight hours in a single workday, or for hours worked over forty hours in a workweek, in violation of CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001; and (2) compensation for noncompliant meal breaks or rest breaks for each day worked as required by CAL. LAB. CODE §§ 226.7 and 512 (2017); IWC Wage Orders #1-2001 through #17-2001.

Following months of arm's-length negotiations conducted in good faith and a full day mediation with an experienced wage-and-hour mediator, the Parties reached an agreement to settle the claims at issue. *See* Exhibit 1, Joint Stipulations and Settlement Agreement (the Agreement). Amin now seeks preliminary approval of the Parties' Agreement to settle this matter for a gross sum of $795,000.00 in accordance with FED. R. CIV. P. 23(e). As shown below, the Agreement will provide significant relief to Amin and the eligible Class Members, defined *infra*, and the terms of the settlement are fair, reasonable, and confer a substantial benefit upon the members of the class.

Accordingly, Amin requests that the Court: (1) grant preliminary approval of the terms of the settlement, including the proposed attorneys' fees and costs; (2) certify, for purposes of settlement, a class action under Rule 23; (3) approve the proposed notice plan, including the Class Notice attached

as Exhibit A to the Agreement; (4) set the deadline for filing objections to the settlement; (5) approve

the Settlement Administrator; (6) appoint Amin's counsel as Class Counsel; (7) approve Amin as Class

Representative; and (8) schedule a final approval hearing, all as more specifically described below *infra*.

## 2.    BACKGROUND.

On February 24, 2021, Amin submitted a letter to the California Labor and Workforce

Development Agency (LWDA) pursuant to § 2699.3 of the California Labor Code advising it of his

intent to file a civil action against NES for alleged violations of the Code, which were actionable under

the Private Attorneys General Act of 2004 (PAGA). Therein, Amin alleged NES failed to pay wages,

failed to provide compensation for missed meal and rest periods, violated record keeping

requirements, unlawfully collected, received, or withheld wages, and failed to pay wages promptly

following the termination of his employment, or when due or payable. *See* CAL. LAB. CODE §§ 203,

221, 225-26, 510, 512 ,1194. Amin waited the statutory 65-day administrative exhaustion period for a

response from the LWDA before filing a civil claim for PAGA penalties against NES.

Thereafter, Amin filed a class action lawsuit in the Central District of California against NES

on March 29, 2021. *Amin v. NES Global, LLC*, No. 8:21-cv-00567-DOC-KES, Doc. 1 (C.D. Cal. Mar.

29, 2021). Amin amended his complaint on June 11, 2021. *Id.* at Doc. 10. Amin's lawsuit involved a

putative class of all current and former hourly workers employed by NES Global who were not paid

overtime at the correct rate under California law for all hours worked over eight hours in a single day

and/or did not receive meal-period or rest-period breaks as required under California law. *Id.* Amin

sought back wages, liquidated damages, penalties, attorneys' fees, costs, and interest. *Id.*

NES filed its Answer to Amin's amended Complaint on June 24, 2021, denying all material

allegations therein. *Id.* at Doc. 11. NES also asserted numerous affirmative defenses, including that a

class action was inappropriate and that it acted in good faith. *Id.*

The Parties attended a full day mediation to try to resolve this matter on December 14, 2021, with experienced wage-and-hour mediator Dennis Clifford. Prior to mediation, the Parties exchanged extensive pay data regarding the hours worked, rates of pay received, job duties performed, and other details regarding the Class Members' employment with NES. The Parties reached an agreement in principle to settle this matter at mediation, the terms of which were memorizlized in a December 2021 Memorandum of Undsertanding. Thereafter, the Parties spent several months negotiating the terms of the Agreement and approval documents in good faith. Ultimately, for the convenience of the Parties, the Parties agreed to dismiss the Action filed in the Central District of Caifornia without prejudice and to proceed in the Southern District of Texas, Houston Division, to effectuate their agreed upon settlement, where several related matters against NES involving Amin's counsel are currently pending.[1] *See Amin*, No. 8:21-cv-00567-DOC-KES, at Doc. 31.

The Parties agreed to the material terms of a settlement of this Action. As part of the Settlement, Amin filed an Original Complaint in the Southern District of Texas, Houston Division, alleging California state law Rule 23 claims under the California Labor Code and California Business and Professionals Code. *See* Doc. 1. NES filed an answer and denied all material allegations therein. *See* Doc. 11. The Parties now seek preliminary approval of their negotiated Agreement.

**3.    SUMMARY OF THE SETTLEMENT TERMS.**

**A.    Proposed Class Definition.**

As of December 14, 2021 (the date of the Parties' mediation), the Parties estimate there are approximately 75 Class Members. Ex. 1 at § III (b). The Parties agree for settlement purposes only that the following class of workers may be certified under Rule 23 as authorized by the Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997): "All hourly-paid, non-exempt employees

---

[1] *See Richardson v. NES Global Talent US Inc.*, No. 4:20-cv-00223 (S.D. Tex. 2020); *Alvarez v. NES Global, Inc.*, No. 4:20-cv-01933 (S.D. Tex. 2020).

working for NES on an alternative workweek schedule in California at any time between March 29, 2017, through the date of Preliminary Approval." (the "Class Members"). *Id.* at §§ I(4), II(3). The Parties agree this class includes all PAGA Members (all hourly-paid, non-exempt employees working for NES on an alternative workweek schedule in California at any time during the PAGA Period) and includes the PAGA Period (February 24, 2020, through the date of Preliminary Approval). *Id.* at §§ I(4), (23), (25).

### B.   Settlement Amount.

The proposed settlement obligates NES to pay a maximum potential settlement amount of $795,000.00 (the Gross Settlement Amount).[2] *Id.* at § I(17). All claims by Participating Class Members and PAGA Members, and the Attorney Fee Award (an amount up to 40% of the Gross Settlement Amount, or $318,000.00), Cost Award (an amount not to exceed $10,000.00), Class Representative Incentive Payment ($5,000.00), PAGA Payment ($9,000.00) and Administration Costs (estimated not to exceed $10,000.00) shall be paid from the Gross Settlement Amount. *Id.* at §§ I(2)-(3), (10), (12), (17)-(18), (21), and (24). This amount is the Net Settlement Amount. *Id.* at § I(21). Further, the Gross Settlement Amount is non-reversionary, and NES shall be separately responsible fo the payment of all payroll taxes and witholdings. *Id.* at I(17).

### C.   Attorneys' Fees and Costs.

Class Counsel seeks preliminary approval of the Parties' agreed Attorney Fee Award and Cost Award for reimbursement of costs and expenses incurred in the prosecution of the claims at issue and

---

[2] At the time of their mediation, the Parties estimated there were approximately 75 Class Members who worked for NES between March 29, 2017 and December 14, 2021 (the date of their mediation). Ex. 1 at § III(B). If the total number of Class Members exceeds 80 as of the date of Preliminary Approval, the Parties agree that the Gross Settlement Amount will increase by the average Individual Settlement Share of the 75 Class Members for each additional Class Member in excess of 80. *Id.* For example, if there are 83 Class Members as of the date of Preliminary Approval, the Gross Settlement Amount will be $813,080 ($795,000.00 + $6,026.67 average Individual Settlement Share to 75 Class Members x 3 additional Class Members). *Id.*

finalization of the Parties' settlement. The Attorney Fee Award shall not exceed 40% of the Gross Settlement Amount, or $318,000.00. *Id.* at § I(3). The Cost Award shall not exceed $10,000.00. *Id.* at § I(12). The Parties agree the Attorney Fee Award and Cost Award shall be paid from the Gross Settlement Amount. If the Court awards less than the amounts requested, any amount not awarded will become part of the Net Settlement Amount for distribution to Participating Class Members and Paga Members. *Id.* at §§ I(3), (12).

### D.    Class Representative Incentive Payment.

The Parties agree that Amin, as Class Representative, is entitled to receive a $5,000.00 Class Representative Incentive Payment from the Gross Settlement Amount in addition to his Individual Settlement Shares as a member of the proposed settlement class. *Id.* at § I(10). This Incentive Payment is made in recognition of Amin's work and efforts in obtaining the benefits for the proposed Class, undertaking the risk for the payment of costs in the event his lawsuit had not been successfully resolved, and in consideration for a General Release of claims as set forth in the Agreement. *Id.* at §§ I(10), III(M)(2)-(3).

### E.    Settlement Administration Costs.

The Parties have agreed to use third-party administrator Simpluris to administer their proposed settlement. The Parties estimate the Administration Costs to be $10,000.00 at this time. *Id.* at § I(2). The Parties agree that all Administration Costs shall be paid from the Gross Settlement Amount. *Id.*

### F.    PAGA Payment.

As part of their Agreement, the Parties agree that $9,000.00 shall be paid to account for civil penalties associated with the claims asserted by Amin on behalf of himself and the PAGA Members with the California Private Attorneys General Act, Labor Code § 2699. *Id.* at §§ I (22)-(25). This payment shall be deducted from the Gross Settlement Amount. *Id.* at § I(17).  Seventy-five percent of

the PAGA Payment ($6,750.00) shall be paid to the LWDA. *Id.* at § I(24). Twenty-five percent ($2,250.00) of the PAGA Payment shall be distributed to PAGA Members as part of their Individual Settlement Share. *Id.*

### G. Distribution to Participating Class Members.

Class Members will be entitled to a share of the Net Settlement Amount. The Net Settlement Amount consists of the Gross Settlement Amount less the proposed Attorney Fee Award ($318,000.00), Cost Award ($10,000.00), Class Representative Incentive Payment ($5,000.00), PAGA Payment ($9,000.00) and Administration Costs ($10,000.00). *Id.* at § I(21).

Individual Settlement Shares will be paid from the Net Settlement Amount. *Id.* at §§ I(18), III (H). The Individual Settlement Shares constitute the amount payable to each Participating Class Member (those Class Members who do not submit a valid and timely request to exclude themselves from the settlement) and to PAGA Members for their portion of the PAGA Payment. *Id.* Class Members are not required to submit a claim form to receive their Individual Settlement Shares pursuant to the Parties' Agreement. *Id.* Class Members may not exclude themselves from the settlement with respect to any PAGA claims alleged or released. *Id.*

Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to (1) the number of workweeks he or she worked in the Class Period based on the class data provided by NES, divided by (2) the total number of workweeks worked by all Participating Class Members in the class Period based on the same class data, which is then multiplied by the Net Settlement Amount. *Id.* at § III(H)(1). One day worked in a given workweek will be credited as a workweek for purposes of this calculation. *Id.* The value of each Class Member's Individual Settlement share is directly tied to the number of workweeks he or she worked in the Class Period. *Id.*

Each PAGA Member shall receive a share of the $2,250 PAGA Payment. *Id.* at §§ I(24), III(H)(2). Each PAGA Member's share of the PAGA Payment will be equal to (1) the number of

workweeks he or she worked in the PAGA Period based on the class data provided by NES, divided by (2) the total number of workweeks worked by all PAGA Members in the PAGA Period based on the same class data, (3) which is then multipled by the $2,250 PAGA Payment payable to PAGA Members. *Id.* at § III(H)(2). PAGA Members shall receive this portion of their Individual Settlement Share regardless of whether they opt-out of the settlement of the class claims and will be deemed to have released all Released Claims related to PAGA. *Id.*

### H.     Taxes.

The Parties agree that each Participating Class Member's settlement award will be apportioned as follows: 25% to wages for which each Class Member will be issued an IRS Form W-2; 75% to interest and penalties for which each Class Member will be issued an IRS Form 1099. *Id.* at § III(H)(3). The Settlement Administrator will deduct applicable employee and employer payroll taxes and withholdings with respect to the 25% wage portion of the settlement payment. *Id.*

### I.     Administration of Notice, Opt-Out, and Objection Process.

The Agreement provides for a notice program upon the prelimary approval of the settlement and approval of the agreed upon notice program. The Parties propose to use Simpluris to serve as the Settlement Administrator. *Id.* at §§ I(37), III(J). The Parties have agreed to the Notice of Class Action Settlement, including the PAGA claims in the LWDA Letter, as set forth in Exhibit A to their Agreement, which they seek Court approval of to send to Class Members following the issuance of preliminary approval of their proposed settlement. *Id.* at § I(7); Ex. 1-A.

The following general deadlines are proposed and are described in more detail in the attached Agreement.

- Within 30 calendar days after entry of any Preliminary Approval Order, NES shall provide the Settlement Administrator a list in electronic form of each Class Member's name, last known mailing address, social security number, and the total number of

workweeks each Class Member worked during the Class Period (the Class Database). *Id.* at § III(K)(2)(a). The information provided to the Settlement Administrator shall be based on NES's payroll, personnel, and/or other business records. *Id.*

- Within 14 calendar days after receipt of the Class Database from NES, the Settlement Administrator will mail the Class Notice to all Class Members via first-class regular U.S. Mail. *Id.* at § III(K)(2)(b).

- Class Members will have 60 calendar days from the mailing of the Class Notice to exclude themselves from the proposed settlement (except as to any PAGA claims) by sending a written Request for Exclusion, attached as Exhibit 2, to the Settlement Administer or to otherwise object to the settlement. *Id.* at §§ I(33)-(34), (36), III(K)(3).

**J.    Payments by NES to Participating Class Members, Settlement Administrator and Class Counsel.**

The Parties' Agreement provides for the following deadlines pertaining to payment and funding of the settlement:

- Within 30 calendar days after the later of (1) the date when Final Approval can no longer be appealed, or (2) if there are no objectors and no plaintiff in intervention at the time of Final Approval, the date the Court grants final approval of the settlement (the Effective Date), NES shall pay the Gross Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator. *Id.* at §§ I(15), III(L)(1)(a).

- Within 15 calendar days of NES funding the settlement, the Settlement Administrator shall calculate and pay all payments due under the settlement, including all Individual Settlement Shares, the Attorney Fee Award, the Cost Award, the Class Representative Incentive Award, the PAGA and the Administration Costs. *Id.* at § III(L)(1)(b).

- Within 15 calendar days of NES funding the settlement, the Settlement Administrator will forward a check for 75% of the PAGA Payment ($6,750.00) to the LWDA for settlement of the PAGA claim. *Id.*

Participating Class Members and PAGA Members will have 180 calendar days after the checks are mailed to them to cash their checks. *Id.* at § III(L)(2). If any checks are not redeemed or deposited within 90 calendar days after mailing, the Settlement Administrator will send a reminder postcard indicating that unless the check is redeemed or deposited in the next 90 calendar days, it will expire and become non-neogiable. *Id.* The Settlement Administrator will distribute funds from any uncashed checks to the Controller of the State of California to be held as unclaimed property for the benefit of those Participating Class Members and PAGA Members who did not cash their checks. *Id.*

**K.    Release of Claims.**

In exchange for the settlement, Participating Class Members and PAGA Members will release NES and the Released Parties[3] from all wage related claims asserted or that could have been asserted during the Class Period. *Id.* at §§ I(30), (32), III(M)(1). This includes:

---

[3] The Released Parties include "Defendant [NES], all of Defendant's clients and customers for whom or on whose behalf Class Members performed services in California, and any of each or all of their respective current, former, and future parent, subsidiary, and affiliated companies, and their agents, officers, shareholders, directors, employees, including successors and assigns, related or affiliated companies' predecessors and successors….and…all of their past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of such programs) and any other persons acting by, through, under, or in concert with any such persons or entities." Ex. 1 at § I(32).

> 30. **Released Claims**: Any and all causes of action, claims, rights, damages, penalties, interest, attorneys' fees, costs, liabilities, expenses, and losses arising from the facts alleged in either the Notice provided to the LWDA or in the operative complaint in the Action, or which could have been alleged based upon such facts including, but not limited to: (1) any alleged failure by Defendant to pay overtime wages, minimum wages, vacation pay, or any other wages due; (2) any alleged failure by Defendant to timely pay wages at termination or during employment; (3) any alleged failure by Defendant to provide meal or rest periods or to pay meal or rest period premiums; (4) any alleged failure by Defendant to provide compliant wage statements; (5) any right or claim for civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.*, based upon the facts alleged in either the Notice provided to the LWDA or subsequently pled in the operative complaint; (6) any right or claim for unfair business practices in violation of California Business & Professions Code §17200 *et seq.* arising from or related to the facts alleged in the operative complaint; and (7) any violation or breach of the California Labor Code arising from the conduct alleged in the operative complaint, including without limitation, California Labor Code §§ 201, 202, 203, 204, 226, 226.3, 226.7, 227.3, 510, 512, 1174, 1194, 1197, 1197.1, and 1198, or (8) any other federal, state or local statute, wage order, rule, regulation, or similar causes of action that could have arisen based upon the facts alleged in the Action.  Notwithstanding the above, the Parties understand and agree that the release in this Settlement does not apply to (a) those rights that as a matter of law cannot be released and/or waived, including, but not limited to, workers' compensation claims; (b) rights or claims that may arise after the close of the Class Period; and (c) rights or claims regarding enforcement of this Settlement.

*Id.* at § I(30).

Moreover, in consideration for the Class Representative Incentive Payment ($5,000.00), Amin agrees to a General Release for known and unknown claims against any Released Party as follows:

> 2. **General Release by Plaintiff:**: In consideration for the Class Representative Incentive Payment to the Plaintiff in an amount up to Five Thousand Dollars and Zero Cents ($5,000.00), in recognition of his work and efforts in obtaining the benefits for the Class and undertaking the risk for the payment of costs in the event the Action had not successfully resolved, Plaintiff, on his own behalf and on behalf of Plaintiff's heirs, agents, representatives, attorneys, executors, administrators, successors, and assigns, and to the greatest extent permitted by law, fully, finally, and forever releases and discharges the Released Parties, and all persons acting under, by, through, or in concert with the Released Parties, from any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, in contract, or for violation of any state or federal statute, law, rule, or regulation arising out of, relating to, or in connection with any act or omission by, or on the part of, any of the Released Parties committed or omitted prior to the execution this Settlement and relating to Plaintiff's employment with,

10

> or separation of employment with, any of the Released Parties, including, but not limited to, any claims or causes of action that were asserted, or which could have been asserted, in the Action (collectively, the "General Release"). This General Release applies to Plaintiff only.

*Id.* at § III(M)(2)-(3).

### 4.    CERTIFICATION OF THE PARTIES' PROPOSED SETTLEMENT CLASS IS WARRANTED.

Pursuant to the Parties' Agreement, Amin seeks certification of a Class consisting of "All hourly-paid, non-exempt employees working for NES on an alternative workweek schedule in California at any time between March 29, 2017, through the date of Preliminary Approval." *Id.* at §§ I(4), II(3), III(D). To effectuate their Agreement, the Parties stipulate and agree to the certification of the claims asserted on behalf of the Class Members. *Id.*

Rule 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) (approving the use of settlement classes where appropriate). Specifically, FED. R. CIV. P. 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); *Amchem*, 521 U.S. at 617.

## A.    Provisional Certification of the Proposed Settlement Class is Appropriate Under Rule 23(A).

Courts are authorized to adjudicate class-wide claims based on a common course of conduct.  A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management but must ensure the other requirements for certification under Rule 23 are satisfied. *Amchem*, 521 U.S. at 620. Thus, any request for preliminary approval of a class settlement should address why certification would be appropriate, albeit within the context of a settlement.  Each of the requisites for class certification is satisfied here.  Fed. R. Civ. P. 23(a) and (b)(3).

### i.    Numerosity.

The numerosity requirement is met if the class is so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has previously held that a class of 40 was sufficient to meet the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (*citing Newberg on Class Actions* § 3.05, at 3–25 (3d ed. 1992) (suggesting that any class consisting of more than 40 members "should raise a presumption that joinder is impracticable")); *see also Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Court have hel that numerosity is satisfied when there are as few as 39 potential class members"); *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members"); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

As previously discussed, the Parties estimate there are at least 75 Class Members. *See* Ex. 1 at § III (b). This is sufficient to satisfy the numerosity requiremenr, as joinder of this many parties would be impracticable.

ii.    **Commonality.**

Rule 23(a)(2) requires questions of law and fact to be common to the class.  FED. R. CIV. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The commonality requirement may be satisfied by showing one issue common to all class members. *Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) *even a single common question will do*") (internal punctuation omitted) (emphasis added). Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092, *6 (N.D. Ill. Feb. 19, 2014). "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim." *Ross v. Citizens Bank, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (finding allegations of state wage and hour "off the clock" claims to be common to all class members); *see also Mullen*, 186 F.3d at 625 ("The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176 (RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (court certified retail store manager misclassification claim because the "the crux of [the] case is whether … company-wide policies, as implemented, violated Plaintiffs' statutory rights").

Commonality is met here because there are primary questions of law and fact central to the claims of Amin and all Class Members against NES, including whether:

- NES employed Amin and the Class Members within the meaning of the California Labor Code;

- NES failed to pay Amin and the Class Members overtime compensation for hours worked in excess of 8 hours each day;

- NES violated the California Labor Code by failing to provide meal and rest periods, maintain accurate records, or provide itemized wage statements;

- NES violated any other statutory provision regarding its compensation to Amin and the Class Members;

- NES's alleged violations of the California Labor Code were made in good faith;

- NES's alleged violations of the Californian Labor Code were willful;

- NES's pay practices applied to Amin and the Class Members; and/or

- Amin and the Class Members sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, Amin asserts Amin and the Parties' proposed settlement Class share sufficient commonality to satisfy Rule 23(a)(2).

### iii.    Typicality.

To satisfy the typicality requirement under Rule 23(a)(3), the proposed class representatives must show that their claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 157 n.13 (1982). The test for typicality focuses on the similarity between the class representatives' legal and remedial theories and the theories of those whom they purport to represent. *See Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (finding the claims of the class representatives and class members to be "typical" if the class members' claims are "fairly encompassed by the named plaintiffs' claims."); *Mullen*, 186 F.3d at 625. The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The analysis is "less on the relative strengths of the

named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

For settlement purposes, Amin meets the typicality requirement because he alleges that he, along with the Class Members, were not paid proper overtime amounts based on NES's policy of failing to pay them overtime for all hours worked over 8 in a single workday and its failure to pay him and the Class Members for rest and meal breaks as required by the California Labor Cod. *See* Doc. 10. In cases involving violations of wage and hour laws, typicality is generally satisfied because the named plaintiffs and class members have been injured by the same course of unlawful conduct. *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). Amin's legal claims here are typical of those of the Class Members because their claims necessarily apply the same legal theory to the same allegedly violative policies and practices.

### iv.    Adequacy of Representation.

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). With respect to the class representatives, courts consider the "[1] the zeal and competence of the representatives' counsel and ... [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *In re Reliant Energy ERISA Litig.*, CIV.A. H-02-2051, 2005 WL 2000707, at *3 (S.D. Tex. Aug. 18, 2005). Class counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class." *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5472118, at *2 (W.D. La. Nov. 8, 2012).

Here, Amin "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 625-26. Thus, Amin has the same interests, and asserts the same type of injury, as the Class Members he seeks to represent. *Id*. Further, Amin has shown himself to be an adequate representative of the class, as he has devoted time and effort in prosecuting the claims herein including: (1) assisting counsel with investigating the case; (2) contacting potential witnesses and securing their cooperation with Class Counsel; and (3) assisting with settlement negotiations. He has also demonstrated commitment to the Class Members in other ways. For example, Amin did not agree to an overly broad release of claims on behalf of the class members. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the Class Members' release is limited to wage-and-hour claims during the Class Period. And, as set forth in further detail below, Amin adequately represented the Class Members by securing a fair and reasonable settlement.

Further, Amin is represented by counsel with significant experience in handling large scale wage and hour litigation. Indeed, a number of courts have commended Class Counsel for being "experienced and well-qualified employment lawyers and class action lawyers [who] have particular expertise in prosecuting and settling wage and hour class actions[.]" *See, e.g., Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE, 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012); *Diaz v. Scores Holding Co., Inc.,* 07 CIV. 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011) (referring to Bruckner Burch as "experienced employment lawyers with good reputations among the employment law bar"); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010) (Bruckner Burch's attorneys "are highly experienced attorneys and have acted as class counsel in similar [wage and hour] actions in federal and state courts"); *Young v. Sea Horse Venture IV, LLC*, 2009 WL 614823, at *3 (N.D. Tex. Mar. 10, 2009) (noting Bruckner Burch's "role in a number of precedent setting labor and employment cases"); *Horton v. Right Turn Supply, LLC*, Case No. 2:19-cv-01271-NR at *8 (W.D.

Pa., Apr. 23, 2020) (Josephson Dunlap "conducted themselves professionally, demonstrated deep knowledge of wage-and-hour law, and have been diligent and responsive to the Court's orders").

Amin's Counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases such as this one. *See, e.g., Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

For these reasons, Amin asserts the Class Members are adequately represented for purposes of certifying the Parties' proposed settlement Class.

**B.      The Requirements for a Class Under Rule 23(b)(3) Have Been Satisfied.**

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The Parties' proposed settlement Class meets this standard.

    **i.      Predominance.**

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy.

The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem*, 521 U.S. at 623. Cohesion justifies adjudication of numerous claims through the representative class mechanism. *Id.* "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* The predominance inquiry must focus on common questions that can be proved through evidence common to the class. *Id.*

In its recent decision in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Supreme Court elaborated on the standard for satisfying Rule 23(b)(3). The Court noted that the predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id.* at 1045. The Court explained the differences between the two sorts of questions, noting that "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* The Court further explained that "the predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* When a court determines that "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*; *see also Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *10 (E.D. La. Nov. 1, 2016).

Here, the issues related to class-wide liability predominate over any individualized issues. Amin alleged NES's policies affected the claims of the Class Members. Thus, while there may be some variations between individual Class Member's claims (e.g., the amount of damanges), common

questions of law and fact predominate over any factual variations in the application of the compensation policies to the individual Class Members.

      **ii.**     **Superiority.**

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617.

Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the settlement Class in this matter. The alternative is potentially dozens of individual lawsuits, piecemeal litigation, and inconsistent adjudications. "Requiring the class members to bring separate lawsuits would waste judicial resources, limit judicial access to the courts, and create a problem of inconsistent judgments." *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1079 (W.D. Pa. 1991); *see also Amchem*, 521 U.S. at 617 (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton County Public Defender Commission*, 560 F.3d 592, 619 (6th Cir. 2007). Under these circumstances, case-by-case resolution of the Class Members' individual claims "would constitute an uneconomical use of judicial resources as well as an inefficient use of the resources of the parties. *Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 488 (W.D. Tenn. 2011). Moreover, requiring individual lawsuits would also raise the possibility that because of the relatively small individual recovery, many potential plaintiffs may not even bring their claims. *Id.* "A class action solves this

problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

The Parties' Agreement provides Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individual litigation carries with it great uncertainty, risk, and costs and provides no guarantee that any injured Class Member will obtain necessary and timely relief at the conclusion of the litigation process. The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.

For these reasons, a settlement class should be certified.

### 5.   THE PARTIES' PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.

Courts recognize – "particularly in class action suits" – that there is an "overriding public interest in favor of settlement[.]" *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 754 (U.S. 2014). "The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

At the first stage of the approval process, the Court need only "determine that the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible judicial approval." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (punctuation and citations omitted). If these standards are met, "the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

Importantly, while "Rule 23 … wisely requires court approval of the terms of any settlement of a class action, . . . the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986). Thus, this Court has an important, though limited, role in the approval of "a proposed settlement in a class action." *Frew v. Hawkins*, 2007 WL 2667985, at *2 (E.D. Tex. Sept. 5, 2007). In reviewing a proposed settlement, a court "can either approve the … settlement as it was written, obtain the consent of the other two parties to a modified settlement, or reject the settlement." *Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1155 (5th Cir. 1991). It "cannot take the negotiated settlement, strike terms [it] does not like, and then impose it on the parties." *Id.*

### A.    There is No Evidence of Fraud or Collusion.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007). In determining whether there is evidence of fraud or collusion, courts often begin by considering whether the parties are represented by experienced counsel. *See Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996). The Court should also consider the parties' representations of arm's length negotiations, particularly when they took place before an experienced mediator. *In re OCA, Inc. Sec. & Derivative Litig.*, 72 Fed. R. Serv. 3d 1060 (E.D. La. 2009).

### B.    The Complexity, Expense, and Duration of Continued Litigation.

It goes without saying that class actions involving challenges to company-wide human resources practices are complex. Indeed, "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). "This is particularly true here, where Plaintiffs alleged overtime claims

21

under …state laws…" governing the payment of overtime. *Id.* "Resolving the procedural issues, the merits, and damages [is] risky, costly, and time consuming." *Id.*

There are well-known examples of wage and hour cases lasting more than a decade. *See, e.g., Duran v. U.S. Bank Nat. Assn.*, 325 P.3d 916, 946 (2014) (reversing certification following bench trial ruling in favor a class of plaintiffs and stating "a new trial will be required for both liability and restitution, and the trial court may entertain a new class certification motion"). Indeed, Amin's counsel have been involved in several wages cases that took years to resolve, even after successful determinations – such as a jury verdict in favor of the plaintiffs - on the merits. *See, e.g., Roussell*, 441 Fed. App'x at 225(more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt*, 444 F.3d at 406 (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs).

In this case, both Parties are represented by counsel with extensive experience in handling these cases. Such cases often require, as here, the review of countless statutes, regulations, and case law. The Parties are required to analyze and litigate issues concerning liability, damages, certification, discovery and a host of other issues which are unique to wage and hour litigation. There are few "bright line" tests, and, as such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time consuming. Each side felt strongly about their respective positions, and without a settlement, the parties would have vigorously prosecuted and defended the relevant claims. This includes litigating the class certification (and, potential, decertification) issue, which is never easily obtained. Hundreds of hours of attorney and paralegal time have been consumed during the pendency of this lawsuit. The parties conducted numerous conference calls and exchanged countless emails and correspondence both before and after a full-day mediation and throughout the litigation. Without a settlement, there is no doubt that the Parties would continue litigating the claims at issue for quite some time.

C.      The Parties' Settlement Was Well-Informed Through Informal Discovery.

Although the Parties did not conduct significant formal discovery, their agreement to settle was well-informed. "Sufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *See Cotton*, 559 F.2d at 1332-33; *see also Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."). Further, the Court can consider any information available to the parties from prior or related proceedings. *See Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995) (class counsel was "thoroughly familiar" with the type of litigation at issue).

Class Counsel has represented individuals in litigation against NES throughout the country and thus had access to a substantial amount of NES policy information. Moreover, the Parties have been working towards an amicable resolution since the fall of 2020. During this time, the Parties engaged in substantial informal discovery, including but not limited to conference calls, interviewed of Class Members, sharing of confidential documents, and a full-day mediation.

NES provided comprehensive payroll information for Amin and the Class Members, allowing for a detailed assessment of the potential damages. Unlike many other wage and hour cases where the parties do not have records of the hours worked by the individuals at issue, NES had records of the time worked for Amin and the Class Members. Thus, the Parties were able to accurately account for the potential overtime hours worked in negotiating a settlement. Given Amin had payroll and timekeeping records for Amin and the Class Members, the applicable employment and payment policies, and access to numerous workers employed/paid under those policies through their representation of Amin and other Class Members, there is no doubt that Amin had sufficient information to reach a settlement in this wage-and-hour case.

23

Moreover, both sides thoroughly investigated the facts, defenses, and relevant legal authorities. No stone was left unturned, and each side was armed with ample information. Accordingly, there can be no dispute that the Parties thoroughly investigated the relevant facts and legal issues through every means available. Such an undertaking yielded substantial information which allowed the Parties to discuss intelligently and freely the pros and cons of the settlement.

**D.     The Agreement is Reasonable Considering the Risks Faced by the Parties.**

A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

Amin's counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Amin's counsel certainly believes the overtime claims against NES are strong, a finding of liability is never assured, especially in complex litigation. Even with what Amin's counsel believes is a strong factual and legal case, the Class Members face significant risks in establishing liability and damages. Further risks exist as they relate to certification of a Rule 23 class, summary judgment, attempted decertification, and surviving an inevitable appeal. Indeed, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Class Members would be obtained.

Amin's counsel's view on the probability of any success on the merits was certainly influenced by the fact that NES has legal and factual grounds available to defend this action. *See* Doc. 11. While Amin's counsel understandably takes issue with the viability of some of the alleged defenses asserted

by NES, the risks associated with the continued litigation of the overtime claims at issue simply cannot be disregarded in measuring the reasonableness of the settlement.

### E.       The Agreement is Reasonable Considering the Range of Possible Recovery and Certainty of Damages.

"In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner*, 472 F. Supp. 2d at 849 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where, as here, "estimating the range of possible recovery … is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012).

Further, courts recognize that parties "give and take to achieve settlements[,]" with neither ending "up with exactly the remedy they would have asked the Court to enter absent the settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In other words, an assessment of the range of possible recovery is based on the realities of litigation at issue. *Cotton*, 559 F.2d at 1330 (a "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'"). And as the discussion of the risks faced by Amin and the Class Members demonstrates, "the lower band of the … Plaintiffs'

range of recovery is zero: a… state class perhaps could not be certified under Rule 23, or a judge or jury could conclude that [Defendant] was not liable." *In re Heartland*, 851 F. Supp. 2d at 1067.

All that said, there can be no question the Parties' Agreement represents fair value for Amin and the Class Members. The Parties' proposed settlement provides the Class Members the opportunity to recover a meaningful amount of compensation representing a substantial amount of alleged unpaid overtime for each of the weeks that they worked during the relevant Class Period. Without a settlement, the Class Members may not have been able to recover any unpaid overtime compensation, much less several hours of unpaid overtime for each week worked.

Additionally, the formulas described above that will be used to determine the amount available to each Class Member are reasonable, consistent with other wage and other settlements approved by Courts throughout the country and applied in a manner which does not discriminate against any Class Member.

Finally, the reasonableness of the settlement is underscored by the fact that NES has various defenses to the merits of the dispute and the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory and civil penalties. *See* Doc. 11. Moreover, had the Parties not reached a settlement, NES would have continued to vigorously fight class certification. Had NES been successful, it could have potentially forced each Class Member to pursue his or her claims on an individual basis—a difficult option for many who lack the financial resources to pursue litigation against a corporation like NES. Even worse, had NES succeeded, many individuals might have not even learned of this litigation or of their potential claims against NES.

**F.      The Reaction of the Class.**

Amin's Counsel and Amin support the settlement and believe that it is fair and in the best interests of all Parties. So does NES. With respect to the reaction of the Class Members, the Court will only be able to evaluate their reaction after preliminary approval and the close of the notice period.

**G.      The Experience and Views of Counsel.**

It is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all parties and after more than sufficient discovery and litigation had been undertaken. Indeed, prior to engaging in settlement discussions, the Parties engaged in substantial informal discovery. Each side independently and thoroughly investigated the claims and defenses at issue. This preparation and familiarity with the facts and law surrounding the compensation plan at issue allowed both Parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation.

Moreover, the settlement was negotiated by attorneys who have been vigorously prosecuting and defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (noting that "the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases"); *see also Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment

of counsel involved in the litigation is entitled to significant weight.").

Accordingly, all the relevant standards for preliminary approval under Rule 23(e) have been met and the settlement should be preliminarily approved. *See* FED. R. CIV. P. 23(e).

6.    **THE PARTIES' PROPOSED NOTICE PROVIDES ADEQUATE NOTICE TO CLASS MEMBERS.**

To protect the rights of absent members of the Class, the Court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner. It does not guarantee any procedure but rather requires only notice reasonably calculated to apprise interested parties of the pendency of the action affecting their interests and an opportunity to present their objections. *Id.* A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of the settlement will enable notice to go out to the Class Members in a manner best calculated to ensure that they are alerted to the terms of the settlement. The Parties' Settlement Notice – which will be sent via U.S. mail by the Setlement Administrator - provides the Class Members with adequate notice of their rights under the Agreement, including information on their estimated settlement allocations, their right to object and/or exclude themselves from the settlement and how to do so, and their right to participate in the final fairness hearing. *See* Ex. 1-A.

7.    **THE PROPOSED ATTORNEY FEE AWARD AND COST AWARD ARE REASONABLE.**

Amin's counsel seeks preliminary approval of the agreed-upon Attorney Fee Award (40% of the Gross Settlement Amount, or $318,000.00) and Cost Award (not to exceed $10,000.00). Ex. 1 at §§ I(3), (12). NES does not oppose these requests. As the Fifth Circuit has noted, the "customary contingency" for this type of litigation is "35 to 40 percent." *See Vela v. City of Houston*, 276 F.3d 659,

681 (5th Cir. 2001); *see, e.g. Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *8 (S.D. Tex. May 7, 2008) (approving 40% contingency fee award in FLSA collective action settlement).

8.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

The Court should schedule a Final Approval Hearing to determine that final approval of the settlement is proper. The Final Approval Hearing will provide a forum to explain, describe or challenge the terms and conditions of the settlement, including the fairness, adequacy, and reasonableness of the settlement. At that time, Class Counsel will submit its application for final approval of the Attorney Fee Award and Cost Award pursuant to Rule 23(h), as well as for the proposed Class Representative Incentive Payment and Individual Settlement Shares to Participating Class Members and PAGA Members.

Accordingly, Amin requests that the Court schedule the Final Approval Hearing for no earlier than 135 days from the date of a preliminary approval order, as required by 28 U.S.C. §1715(d).

9.    CONCLUSION.

For the foregoing reasons, Amin respectfully requests that the Court issue an order: (i) preliminarily finding the terms of the Agreement to be adequate, fair, and reasonable and in the best interests of the Class Members; (ii) preliminarily certifying, pursuant to FED. R. CIV. P. 23 the Parties' proposed settlement Class for purposes of settlement only; (iii) appointing Amin as "Class Representative" who together with Class Counsel, shall be authorized to act on behalf of the Class Members with respect to the claims at issue and the terms of the Agreement; (iv) appointing Class Counsel as counsel for the Class Members pursuant to FED. R. CIV. P. 23(g) and authorizing notice that Class Counsel requests 40% of the Gross Settlement Amount in attorneys' fees and also requests recovery of Class Counsel's expenses and costs in an amount not to exceed $10,000.00; (v) appointing Simpluris as the Settlement Administrator; (vi) approving the form and content of the Notice (Ex. 1-

A), and authorizing distribution of the Settlement Documents and setting a 60 calendar day deadline for filing of objections to or opting-out of the settlement; and (vii) setting the date for the Final Approval Hearing for no earlier than 135 days after the date of the Preliminary Approval Order.

Respectfully submitted,

By: */s/ Carl A. Fitz*
    **Michael A. Josephson**
    State Bar No. 24014780
    Fed. Id. 27157
    **Andrew W. Dunlap**
    State Bar No. 24078444
    Fed. Id. 1093163
    **Carl A. Fitz**
    State Bar No. 24105863
    Fed. Id. 3158237
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    cfitz@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    State Bar No. 24001807
    **BRUCKNER BURCH, PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

This motion is unopposed.

*/s/ Carl A. Fitz*

_____

Carl A. Fitz


## CERTIFICATE OF SERVICE

I served this document on all parties via the Court's ECF system.

*/s/ Carl A. Fitz*

_____

Carl A. Fitz