## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| SACHIN AMIN, Individually and on behalf of those Similarly Situated, | **Case No. 4:22-cv-02845** |
| v. | Rule 23 Class Action |
| NES GLOBAL, LLC | Jury Trial Demanded |

## AMIN'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1.    SUMMARY.

Plaintiff Sachin Amin ("Amin") seeks final approval of the Parties' class settlement preliminarily approved by the Court on September 21, 2022. *See* Doc. 7.

The Parties strictly complied with the terms and provisions of their Agreement (Doc. 6-1) and the preliminary approval order (Doc. 7) in completing the notice requirements. The notice process was an overwhelming success. The Settlement Administrator issued notice to 77 Class Members, updated 17 Class Members' addresses, re-issued notices returned as undeliverable, received zero requests to opt-out of the settlement, and received zero objections to the settlement. *See* Exhibit 1, Declaration of Evelin Reyes. Based on the administration of the notice plan, Participating Class Members and PAGA Members will receive their Individual Settlement Shares following final approval through checks sent by the Settlement Administrator through the mail.

As shown below, the Parties' Agreement will provide significant relief to Amin and the Participating Class Members and PAGA Members. The terms of the settlement are fair, reasonable, and confer a substantial benefit upon the members of the class. The Parties' Agreement resolves a complex case and permits these proceedings to conclude with certainty. The Agreement, including those provisions applicable to the notice process and claims administration, has been diligently implemented since the Court preliminariliy approved the settlement. The reaction of the Class Members has been overwhelmingly positive.

Because all the applicable standards for final approved under Federal Rule of Civil Procedure 23(e) have been more than satisfied, Amin requests the Court enter an order granting final approval of the testms of the Parties' Agreement.

2.    SUMMARY OF THE SETTLEMENT TERMS.

A.    Proposed Class Definition.

Based on the Class List provided by NES to the Settlement Administratror, there are 77 Class Members. Ex. 1 at ¶ 6; *see also* Doc. 6-1 at § III (b) (estimating there were approximately 75 Class Members). The Parties agree for settlement purposes only that the following class of workers may be certified under Rule 23 as authorized by the Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997): "All hourly-paid, non-exempt employees working for NES on an alternative workweek schedule in California at any time between March 29, 2017, through the date of Preliminary Approval [September 21, 2022]." (the "Class Members"). Doc. 6-1 at §§ I(4), II(3). The Parties agree this class includes all PAGA Members (all hourly-paid, non-exempt employees working for NES on an alternative workweek schedule in California at any time during the PAGA Period) and includes the PAGA Period (February 24, 2020, through September 21, 2022, the date of Preliminary Approval). *Id.* at §§ I(4), (23), (25).

### B.    Settlement Amount.

The proposed settlement obligates NES to pay a maximum potential settlement amount of $795,000.00 (the Gross Settlement Amount). *Id.* at § I(17). All claims by Participating Class Members and PAGA Members, and the Attorney Fee Award (an amount up to 40% of the Gross Settlement Amount, or $318,000.00), Cost Award (an amount not to exceed $10,000.00), Class Representative Incentive Payment ($5,000.00), PAGA Payment ($9,000.00) and Administration Costs (estimated not to exceed $10,000.00) shall be paid from the Gross Settlement Amount. *Id.* at §§ I(2)-(3), (10), (12), (17)-(18), (21), and (24). This amount is the Net Settlement Amount. *Id.* at § I(21). Further, the Gross Settlement Amount is non-reversionary, and NES shall be separately responsible fo the payment of all payroll taxes and witholdings. *Id.* at I(17).

### C.    Attorneys' Fees and Costs.

Class Counsel seeks final approval of the Parties' agreed Attorney Fee Award and Cost Award for reimbursement of costs and expenses incurred in the prosecution of the claims at issue and

finalization of the Parties' settlement. The Attorney Fee Award shall not exceed 40% of the Gross Settlement Amount, or $318,000.00. *Id.* at § I(3). The Cost Award shall not exceed $10,000.00. *Id.* at § I(12). The Parties agree the Attorney Fee Award and Cost Award shall be paid from the Gross Settlement Amount. If the Court awards less than the amounts requested, any amount not awarded will become part of the Net Settlement Amount for distribution to Participating Class Members and Paga Members. *Id.* at §§ I(3), (12).

### D. Class Representative Incentive Payment.

Amin seeks final approval of a payment of a $5,000.00 Class Representative Incentive Payment from the Gross Settlement Amount to be paid to Amin, as Class Representative. This amount is to be paid in addition to his Individual Settlement Shares as a member of the proposed settlement class. This Incentive Payment is made in recognition of Amin's work and efforts in obtaining the benefits for the proposed Class, undertaking the risk for the payment of costs in the event his lawsuit had not been successfully resolved, and in consideration for a General Release of claims as set forth in the Agreement. *Id.* at §§ I(10), III(M)(2)-(3).

### E. Settlement Administration Costs.

Amin seeks final approval of $10,000.00 to pay the Administration Costs of the Settlement Administrator, which shall be paid from the Gross Settlement Amount.

### F. PAGA Payment.

Amin seeks final approval of a $9,000.00 payment to be paid to account for civil penalties associated with the claims asserted by Amin on behalf of himself and the PAGA Members with the California Private Attorneys General Act, Labor Code § 2699. *Id.* at §§ I (22)-(25). This payment shall be deducted from the Gross Settlement Amount. *Id.* at § I(17).  Seventy-five percent of the PAGA Payment ($6,750.00) shall be paid to the LWDA. *Id.* at § I(24). Twenty-five percent of the PAGA

Payment ($2,250.00) shall be distributed to PAGA Members as part of their Individual Settlement Share. *Id.*

### G.    Distribution to Participating Class Members.

Class Members will be entitled to a share of the Net Settlement Amount. The Net Settlement Amount consists of the Gross Settlement Amount less the proposed Attorney Fee Award ($318,000.00), Cost Award ($10,000.00), Class Representative Incentive Payment ($5,000.00), PAGA Payment ($9,000.00) and Administration Costs ($10,000.00). *Id.* at § I(21).

Individual Settlement Shares will be paid from the Net Settlement Amount. *Id.* at §§ I(18), III (H). The Individual Settlement Shares constitute the amount payable to each Participating Class Member (those Class Members who did not submit a valid and timely request to exclude themselves from the settlement) and to PAGA Members for their portion of the PAGA Payment. *Id.*

Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to (1) the number of workweeks he or she worked in the Class Period based on the class data provided by NES, divided by (2) the total number of workweeks worked by all Participating Class Members in the class Period based on the same class data, which is then multiplied by the Net Settlement Amount. *Id.* at § III(H)(1). One day worked in a given workweek will be credited as a workweek for purposes of this calculation. *Id.* The value of each Class Member's Individual Settlement share is directly tied to the number of workweeks he or she worked in the Class Period. *Id.*

Each PAGA Member shall receive a share of the $2,250 PAGA Payment. *Id.* at §§ I(24), III(H)(2). Each PAGA Member's share of the PAGA Payment will be equal to (1) the number of workweeks he or she worked in the PAGA Period based on the class data provided by NES, divided by (2) the total number of workweeks worked by all PAGA Members in the PAGA Period based on the same class data, (3) which is then multipled by the $2,250 PAGA Payment payable to PAGA Members. *Id.* at § III(H)(2). PAGA Members shall receive this portion of their Individual Settlement

Share regardless of whether they opt-out of the settlement of the class claims and will be deemed to have released all Released Claims related to PAGA. *Id.*

### H.    Taxes.

The Parties agree that each Participating Class Member's settlement award will be apportioned as follows: 25% to wages for which each Class Member will be issued an IRS Form W-2; 75% to interest and penalties for which each Class Member will be issued an IRS Form 1099. *Id.* at § III(H)(3). The Settlement Administrator will deduct applicable employee and employer payroll taxes and withholdings with respect to the 25% wage portion of the settlement payment. *Id.*

### I.    Administration of Notice, Opt-Out, and Objection Process.

To protect the rights of absent class members, the settlement must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). *See, e.g.*, 4 *Newberg on Class Actions* (Fourth) §§ 8.21, 8.39; *Manual for Complex Litigation Fourth* (Fed. Judicial Center 2004) §§ 21.311-21.312.

The settlement preliminarily approved by this Court set forth a fair and reasonable notice process which complied with the requirements of FED. R. CIV. P. 23(e). As shown below, this process was carried out without delay or difficulty as follows:

- On November 4, 2022, NES provided the Settlement Administrator a list in electronic form of each Class Member's name, last known mailing address, social security number, and the total number of workweeks each Class Member worked during the Class Period (the Class Database). Ex. 1 at ¶ 6. The information provided to the Settlement Administrator was based on NES's payroll, personnel, and/or other business records.

- On November 21, 2022, the Settlement Administrator mailed the Class Notice to all Class Members via first-class regular U.S. Mail. *Id.* at ¶ 8.

- For any notice packet that was returned as undeliverable, the Settlement Administrator performed additional research to locate a current address. Using these advanced research techniques, the Settlement Administrator only identified seven truly underliverable notice packets. *Id.* at ¶ 9.

- On January 3, 2023, the notice period closed. Zero Class Members moved to exclude themselves from the proposed settlement (except as to any PAGA claims) by sending a written Request for Exclusion to the Settlement Administrator. *Id.* at ¶ 13. Zero Class Members filed written objections to the settlement. *Id.* at ¶ 14.

**J.      Payments by NES to Participating Class Members, Settlement Administrator and Class Counsel.**

The Parties' Agreement provides for the following deadlines pertaining to payment and funding of the settlement:

- Within 30 calendar days after the later of (1) the date when Final Approval can no longer be appealed, or (2) if there are no objectors and no plaintiff in intervention at the time of Final Approval, the date the Court grants final approval of the settlement (the Effective Date), NES shall pay the Gross Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator. Doc. 6-1 at §§ I(15), III(L)(1)(a).

- Within 15 calendar days of NES funding the settlement, the Settlement Administrator shall calculate and pay all payments due under the settlement, including all Individual Settlement Shares, the Attorney Fee Award, the Cost Award, the Class Representative Incentive Award, the PAGA and the Administration Costs. *Id.* at § III(L)(1)(b).

- Within 15 calendar days of NES funding the settlement, the Settlement Administrator will forward a check for 75% of the PAGA Payment ($6,750.00) to the LWDA for settlement of the PAGA claim. *Id.*

Participating Class Members and PAGA Members will have 180 calendar days after the checks are mailed to them to cash their checks. *Id.* at § III(L)(2). If any checks are not redeemed or deposited within 90 calendar days after mailing, the Settlement Administrator will send a reminder postcard indicating that unless the check is redeemed or deposited in the next 90 calendar days, it will expire and become non-neogiable. *Id.* The Settlement Administrator will distribute funds from any uncashed checks to the Controller of the State of California to be held as unclaimed property for the benefit of those Participating Class Members and PAGA Members who did not cash their checks. *Id.*

### K.    Release of Claims.

In exchange for the settlement, Participating Class Members and PAGA Members will release NES and the Released Parties[1] from all wage related claims asserted or that could have been asserted during the Class Period. *Id.* at §§ I(30), (32), III(M)(1). This includes:

> 30.    **Released Claims**: Any and all causes of action, claims, rights, damages, penalties, interest, attorneys' fees, costs, liabilities, expenses, and losses arising from the facts alleged in either the Notice provided to the LWDA or in the operative complaint in the Action, or which could have been alleged based upon such facts including, but not limited to: (1) any alleged failure by Defendant to pay overtime wages, minimum wages, vacation pay, or any other wages due; (2) any alleged failure by Defendant to timely pay wages at termination or during employment; (3) any alleged failure by Defendant to provide meal or rest periods or to pay meal or rest period premiums; (4) any alleged failure by Defendant to provide compliant wage statements; (5) any right or claim for civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor Code § 2698 *et seq.*, based upon the facts alleged in either the Notice provided to the LWDA or subsequently pled in the operative complaint; (6) any right or claim for unfair business practices in violation of California Business & Professions Code §17200 *et seq.* arising from or related to the facts alleged in the operative complaint; and (7) any violation or breach of the California Labor Code arising from the conduct alleged in the operative complaint, including without limitation, California Labor Code §§ 201, 202, 203, 204, 226, 226.3, 226.7, 227.3, 510, 512, 1174, 1194, 1197, 1197.1, and 1198, or (8) any other federal, state or local statute, wage order, rule, regulation, or similar causes of action that could have arisen based upon the facts alleged in the Action. Notwithstanding the above, the Parties understand and agree that the release in this Settlement does not apply to (a) those rights that as a matter of law cannot be released and/or waived, including, but not limited to, workers' compensation claims; (b) rights or claims that may arise after the close of the Class Period; and (c) rights or claims regarding enforcement of this Settlement.

*Id.* at § I(30).

Moreover, in consideration for the Class Representative Incentive Payment ($5,000.00), Amin agrees to a General Release for known and unknown claims against any Released Party as follows:

---

[1] The Released Parties include "Defendant [NES], all of Defendant's clients and customers for whom or on whose behalf Class Members performed services in California, and any of each or all of their respective current, former, and future parent, subsidiary, and affiliated companies, and their agents, officers, shareholders, directors, employees, including succesors and assigns, related or affiliated companies' predecessors and successors….and…all of their past and present employees, officers, directors, stockholders, owners, representatives, assigns, attorneys, agents, insurers, employee benefit programs (and the trustees, administrators, fiduciaries and insurers of such programs) and any other persons acting by, through, under, or in concert with any such persons or entities." Ex. 1 at § I(32).

2.    **General Release by Plaintiff**:: In consideration for the Class Representative Incentive Payment to the Plaintiff in an amount up to Five Thousand Dollars and Zero Cents ($5,000.00), in recognition of his work and efforts in obtaining the benefits for the Class and undertaking the risk for the payment of costs in the event the Action had not successfully resolved, Plaintiff, on his own behalf and on behalf of Plaintiff's heirs, agents, representatives, attorneys, executors, administrators, successors, and assigns, and to the greatest extent permitted by law, fully, finally, and forever releases and discharges the Released Parties, and all persons acting under, by, through, or in concert with the Released Parties, from any and all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, known or unknown, asserted or that might have been asserted, whether in tort, in contract, or for violation of any state or federal statute, law, rule, or regulation arising out of, relating to, or in connection with any act or omission by, or on the part of, any of the Released Parties committed or omitted prior to the execution this Settlement and relating to Plaintiff's employment with,

> or separation of employment with, any of the Released Parties, including, but not limited to, any claims or causes of action that were asserted, or which could have been asserted, in the Action (collectively, the "General Release"). This General Release applies to Plaintiff only.

*Id.* at § III(M)(2)-(3).

3.    **THE COURT SHOULD GIVE THE PARTIES' SETTLEMENT FINAL APPROVAL.**

Amin seeks final approval of the Parties' Agreement (Doc. 6-1) under FED. R. CIV. P. 23(e). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910). Settlement spares the litigants the uncertainty, delay, and expense of a trial, while simultaneously reducing the burden on judicial resources. The ultimate determination whether a proposed settlement warrants approval resides in the Court's (or arbitrator's) discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc.* v. *Anderson,* 390 U.S. 414, 424-25 (1968).

To grant final approval, the Court must conclude that the proposed settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e). The Parties submit the terms of their Agreement, which the Court preliminarily approved, are fair and reasonable and in the best interests of all parties. All the requirements and standards for final approval have been met or exceeded. The Class Members'

response to the settlement was overwhelmingly positive. Indeed, not one Class Member objected to the Settlement and no Class Members opted-out of the Settlement. *See* Ex. 1 at ¶ 14.

### A.    The Standards for Final Approval.

Pursuant to the Parties' Agreement, Amin seeks final certification of a Class consisting of "All hourly-paid, non-exempt employees working for NES on an alternative workweek schedule in California at any time between March 29, 2017, through the date of Preliminary Approval [September 21, 2022]." Doc. 6-1 at §§ I(4), II(3), III(D).

Rule 23 provides the mechanism for certifying a class action, including, as here, through a class certified for settlement purposes. *See Amchem Products*, 521 U.S. at 591. Specifically, Rule 23(e) states:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1)  The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2)  If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3)  The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4)  If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5)  Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

FED. R. CIV. P. 23(e); *Amchem*, 521 U.S. at 617.

"The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). The Fifth Circuit uses a six

factor test in determining the appropriateness of the proposed settlement: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members. *See Reed v. Gen. Motors Corp.,* 703 F.2d 170, 172 (5th Cir. 1983); *Parker v. Anderson,* 667 F.2d 1204, 1209 (5th Cir. 1982).

### B.    All the Standards for Final Approval Have Been Met.

### i.    There is No Evidence of Fraud or Collusion.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 844 (E.D. La. 2007). In determining whether there is evidence of fraud or collusion, courts often begin by considering whether the parties are represented by experienced counsel. *See Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996). The Court should also consider the parties' representations of arm's length negotiations, particularly when they took place before an experienced mediator. *In re OCA, Inc. Sec. & Derivative Litig.*, 72 Fed. R. Serv. 3d 1060 (E.D. La. 2009).

There are no allegations or indications of fraud or collusion here. *See Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984)(determining that "[i]n the absence of fraud or collusion, the trial court should be hesitant to substitute its own judgment for that of counsel"); *see also* 4 *Newberg on Class Actions* (Fourth) §11:51 (4th ed. 2002)(there is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary).

### ii.    The Complexity, Expense, and Duration of Continued Litigation.

It goes without saying that class actions involving challenges to company-wide human resources practices are complex. Indeed, "[w]age-and-hour collective and class actions are, by their

very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014). "This is particularly true here, where Plaintiffs alleged overtime claims under …state laws…" governing the payment of overtime. *Id.* "Resolving the procedural issues, the merits, and damages [is] risky, costly, and time consuming." *Id.*

There are well-known examples of wage and hour cases lasting more than a decade. *See, e.g., Duran v. U.S. Bank Nat. Assn.*, 325 P.3d 916, 946 (2014) (reversing certification following bench trial ruling in favor a class of plaintiffs and stating "a new trial will be required for both liability and restitution, and the trial court may entertain a new class certification motion"). Indeed, Amin's counsel have been involved in several wages cases that took years to resolve, even after successful determinations – such as a jury verdict in favor of the plaintiffs - on the merits. *See, e.g., Roussell*, 441 Fed. App'x at 225(more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt*, 444 F.3d at 406 (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs).

In this case, both Parties are represented by counsel with extensive experience in handling these cases.  Such cases often require, as here, the review of countless statutes, regulations, and case law. The Parties are required to analyze and litigate issues concerning liability, damages, certification, discovery and a host of other issues which are unique to wage and hour litigation. There are few "bright line" tests, and, as such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time consuming. Each side felt strongly about their respective positions, and without a settlement, the parties would have vigorously prosecuted and defended the relevant claims. This includes litigating the class certification (and potential decertification) issue, which is never easily obtained. Hundreds of hours of attorney and paralegal time have been consumed during the pendency of this lawsuit. The Parties conducted numerous conference calls and exchanged countless emails and correspondence

both before and after a full-day mediation and throughout the litigation. Without a settlement, there is no doubt that the Parties would continue litigating the claims at issue for quite some time.

### C.    The Parties' Settlement Was Well-Informed Through Informal Discovery.

Although the Parties did not conduct significant formal discovery, their agreement to settle was well-informed. "Sufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *See Cotton*, 559 F.2d at 1332-33; *see also Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."). Further, the Court can consider any information available to the parties from prior or related proceedings. *See Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 528 (E.D. Tex. 1995) (class counsel was "thoroughly familiar" with the type of litigation at issue).

Class Counsel has represented individuals in litigation against NES throughout the country and thus had access to a substantial amount of NES policy information. Moreover, the Parties have been working towards an amicable resolution since the fall of 2020. During this time, the Parties engaged in substantial informal discovery, including but not limited to conference calls, interviewed of Class Members, sharing of confidential documents, and a full-day mediation.

NES provided comprehensive payroll information for Amin and the Class Members, allowing for a detailed assessment of the potential damages. Unlike many other wage and hour cases where the parties do not have records of the hours worked by the individuals at issue, NES had records of the time worked for Amin and the Class Members. Thus, the Parties were able to accurately account for the potential overtime hours worked in negotiating a settlement. Given Amin had payroll and timekeeping records for Amin and the Class Members, the applicable employment and payment policies, and access to numerous workers employed/paid under those policies through their

representation of Amin and other Class Members, there is no doubt that Amin had sufficient information to reach a settlement in this wage-and-hour case.

Moreover, both sides thoroughly investigated the facts, defenses, and relevant legal authorities. No stone was left unturned, and each side was armed with ample information. Accordingly, there can be no dispute that the Parties thoroughly investigated the relevant facts and legal issues through every means available. Such an undertaking yielded substantial information which allowed the Parties to discuss intelligently and freely the pros and cons of the settlement.

> D.    **The Agreement is Reasonable Considering the Risks Faced by the Parties.**

A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326 (5th Cir. 1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages).

Amin's counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Amin's counsel certainly believes the overtime claims against NES are strong, a finding of liability is never assured, especially in complex litigation. Even with what Amin's counsel believes is a strong factual and legal case, the Class Members face significant risks in establishing liability and damages. Further risks exist as they relate to certification of a Rule 23 class, summary judgment, attempted decertification, and surviving an inevitable appeal. Indeed, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Class Members would be obtained.

Amin's counsel's view on the probability of any success on the merits was certainly influenced by the fact that NES has legal and factual grounds available to defend this action. *See* Doc. 11. While

Amin's counsel understandably takes issue with the viability of some of the alleged defenses asserted by NES, the risks associated with the continued litigation of the overtime claims at issue simply cannot be disregarded in measuring the reasonableness of the settlement.

E.    **The Agreement is Reasonable Considering the Range of Possible Recovery and Certainty of Damages.**

"In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner*, 472 F. Supp. 2d at 849 (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does not require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where, as here, "estimating the range of possible recovery … is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012).

Further, courts recognize that parties "give and take to achieve settlements[,]" with neither ending "up with exactly the remedy they would have asked the Court to enter absent the settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In other words, an assessment of the range of possible recovery is based on the realities of litigation at issue. *Cotton*, 559 F.2d at 1330 (a "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'"). And as the discussion of the risks faced by Amin and the Class Members demonstrates, "the lower band of the … Plaintiffs'

range of recovery is zero: a… state class perhaps could not be certified under Rule 23, or a judge or jury could conclude that [Defendant] was not liable." *In re Heartland*, 851 F. Supp. 2d at 1067.

All that said, there can be no question the Parties' Agreement represents fair value for Amin and the Class Members. The Parties' proposed settlement provides the Class Members the opportunity to recover a meaningful amount of compensation representing a substantial amount of alleged unpaid overtime for each of the weeks that they worked during the relevant Class Period. Without a settlement, the Class Members may not have been able to recover any unpaid overtime compensation, much less several hours of unpaid overtime for each week worked.

Additionally, the formulas described above to determine the amount available to each Class Member are reasonable, consistent with other wage and other settlements approved by Courts throughout the country and applied in a manner which does not discriminate against anyone.

Finally, the reasonableness of the settlement is underscored by the fact that NES has various defenses to the merits of the dispute and the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, prevent the recovery of liquidated (or double) damages, and/or eliminate certain statutory and civil penalties. *See* Doc. 11. Moreover, had the Parties not reached a settlement, NES would have continued to vigorously fight class certification. Had NES been successful, it could have potentially forced each Class Member to pursue his or her claims on an individual basis—a difficult option for many who lack the financial resources to pursue litigation against a corporation like NES. Even worse, had NES succeeded, many individuals might have not even learned of this litigation or of their potential claims against NES.

F.      The Reaction of the Class.

Amin's Counsel and Amin support the settlement and believe that it is fair and in the best interests of all Parties. So does NES. The Parties' opinions were validated by the fact that none of the

77 eligible Class Members chose to opt-out of the proposed Settlement or filed objections concerning the Parties' proposed Settlement. *See* Ex. 1 at ¶ 13,14,15.

### G.    The Experience and Views of Counsel.

It is beyond dispute that this settlement was the result of arm's-length negotiations, conducted by experienced counsel for all parties and after more than sufficient discovery and litigation had been undertaken. Indeed, prior to engaging in settlement discussions, the Parties engaged in substantial informal discovery. Each side independently and thoroughly investigated the claims and defenses at issue. This preparation and familiarity with the facts and law surrounding the compensation plan at issue allowed both Parties to intelligently, and in good faith, weigh both the risks and benefits of continued litigation.

Moreover, the settlement was negotiated by attorneys who have been vigorously prosecuting and defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (noting that "the opinions of counsel should be given considerable weight both because of counsel's familiarity with the litigation and previous experience with cases"); *see also Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

Accordingly, all the relevant standards for final approval under Rule 23(e) have been met and

the settlement should be finally approved. *See* Fed. R. Civ. P. 23(e).

**H.     Final Certification of the Settlement Class is Appropriate Under Rule 23(A).**

Courts are authorized to adjudicate class-wide claims based on a common course of conduct.  A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management but must ensure the other requirements for certification under Rule 23 are satisfied. *Amchem*, 521 U.S. at 620. Thus, any request for final approval of a class settlement should address why certification would be appropriate, albeit within the context of a settlement.  Each of the requisites for class certification is satisfied here.  Fed. R. Civ. P. 23(a) and (b)(3).

**i.     Numerosity.**

The numerosity requirement is met if the class is so large that "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Fifth Circuit has previously held that a class of 40 was sufficient to meet the numerosity requirement. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (*citing Newberg on Class Actions* § 3.05, at 3–25 (3d ed.1992) (suggesting that any class consisting of more than 40 members "should raise a presumption that joinder is impracticable")); *see also Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569 (C.D. Cal. 2008) ("Court have hel that numerosity is satisfied when there are as few as 39 potential class members"); *Celano v. Marriot Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007) ("courts generally find that the numerosity factor is satisfied if the class comprises 40 or more members"); *Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 405 (D.N.J. 1990) ("It is proper for the court to accept common sense assumptions in order to support a finding of numerosity.").

As previously discussed, there are 77 Class Members. *See* Ex. 1 at ¶ 6. This is sufficient to satisfy the numerosity requiremenr, as joinder of this many parties would be impracticable.

**ii.     Commonality.**

Rule 23(a)(2) requires questions of law and fact to be common to the class. FED. R. CIV. P. 23(a)(2); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). The commonality requirement may be satisfied by showing one issue common to all class members. *Dukes*, 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) *even a single common question will do*") (internal punctuation omitted) (emphasis added). Commonality thus requires a common issue capable of class-wide resolution, "which means a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350.

A common question may be shown where claims of individual members are based on the common application of a statute, or where class members are aggrieved by the same or similar conduct. *Kurgan v. Chiro One Wellness Centers LLC*, 2014 WL 642092, *6 (N.D. Ill. Feb. 19, 2014). "To satisfy the commonality element, it is enough for plaintiffs to present just one common claim." *Ross v. Citizens Bank, N.A.*, 667 F.3d 900, 908 (7th Cir. 2012) (finding allegations of state wage and hour "off the clock" claims to be common to all class members); *see also Mullen*, 186 F.3d at 625 ("The test for commonality is not demanding and is met where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members"); *Youngblood v. Family Dollar Stores, Inc.*, No. 09 Civ. 3176 (RMB), 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011) (court certified retail store manager misclassification claim because the "the crux of [the] case is whether … company-wide policies, as implemented, violated Plaintiffs' statutory rights").

Commonality is met here because there are primary questions of law and fact central to the claims of Amin and all Class Members against NES, including whether:

- NES employed Amin and the Class Members within the meaning of the California Labor Code;

- NES failed to pay Amin and the Class Members overtime compensation for hours worked in excess of 8 hours each day;

- NES violated the California Labor Code by failing to provide meal and rest periods, maintain accurate records, or provide itemized wage statements;

- NES violated any other statutory provision regarding its compensation to Amin and the Class Members;

- NES's alleged violations of the California Labor Code were made in good faith;

- NES's alleged violations of the Californian Labor Code were willful;

- NES's pay practices applied to Amin and the Class Members; and/or

- Amin and the Class Members sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, Amin and the Parties' proposed settlement Class share sufficient commonality to satisfy Rule 23(a)(2).

### iii. Typicality.

To satisfy the typicality requirement under Rule 23(a)(3), the proposed class representatives must show that their claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest* v. *Falcon,* 457 U.S. 147, 157 n.13 (1982). The test for typicality focuses on the similarity between the class representatives' legal and remedial theories and the theories of those whom they purport to represent. *See Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (finding the claims of the class representatives and class members to be "typical" if the class members' claims are "fairly encompassed by the named plaintiffs' claims."); *Mullen*, 186 F.3d at 625. The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The analysis is "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

For settlement purposes, Amin meets the typicality requirement because he alleges that he, along with the Class Members, were not paid proper overtime amounts based on NES's policy of failing to pay them overtime for all hours worked over 8 in a single workday and its failure to pay him and the Class Members for rest and meal breaks as required by the California Labor Cod. *See* Doc. 10. In cases involving violations of wage and hour laws, typicality is generally satisfied because the named plaintiffs and class members have been injured by the same course of unlawful conduct. *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009). Amin's legal claims here are typical of those of the Class Members because their claims necessarily apply the same legal theory to the same allegedly violative policies and practices.

### iv.    Adequacy of Representation.

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). With respect to the class representatives, courts consider the "[1] the zeal and competence of the representatives' counsel and ... [2] the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Id.* (*citing Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *In re Reliant Energy ERISA Litig.*, CIV.A. H-02-2051, 2005 WL 2000707, at *3 (S.D. Tex. Aug. 18, 2005). Class counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class." *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5472118, at *2 (W.D. La. Nov. 8, 2012).

Here, Amin "possess[es] the same interest and suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 625-26. Thus, Amin has the same interests, and asserts the same type

of injury, as the Class Members he seeks to represent. *Id.* Further, Amin has shown himself to be an adequate representative of the class, as he has devoted time and effort in prosecuting the claims herein including: (1) assisting counsel with investigating the case; (2) contacting potential witnesses and securing their cooperation with Class Counsel; and (3) assisting with settlement negotiations. He has also demonstrated commitment to the Class Members in other ways. For example, Amin did not agree to an overly broad release of claims on behalf of the class members. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the Class Members' release is limited to wage-and-hour claims during the Class Period. And, as set forth in further detail below, Amin adequately represented the Class Members by securing a fair and reasonable settlement.

Further, Amin is represented by counsel with significant experience in handling large scale wage and hour litigation. Indeed, a number of courts have commended Class Counsel for being "experienced and well-qualified employment lawyers and class action lawyers [who] have particular expertise in prosecuting and settling wage and hour class actions[.]" *See, e.g., Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE, 2012 WL 2458172, at *2 (S.D.N.Y. June 28, 2012); *Diaz v. Scores Holding Co., Inc.,* 07 CIV. 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011) (referring to Bruckner Burch as "experienced employment lawyers with good reputations among the employment law bar"); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010)(Bruckner Burch's attorneys "are highly experienced attorneys and have acted as class counsel in similar [wage and hour] actions in federal and state courts"); *Young v. Sea Horse Venture IV, LLC*, 2009 WL 614823, at *3 (N.D. Tex. Mar. 10, 2009)(noting Bruckner Burch's "role in a number of precedent setting labor and employment cases"); *Horton v. Right Turn Supply, LLC*, Case No. 2:19-cv-01271-NR at *8 (W.D. PA, Apr. 23, 2020) (Josephson Dunlap "conducted themselves professionally, demonstrated deep knowledge of wage-and-hour law, and have been diligent and responsive to the Court's orders").

Amin's Counsel's skill, knowledge, reputation, and experience are well-recognized in FLSA cases such as this one. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs).

For these reasons, Amin asserts the Class Members are adequately represented for purposes of certifying the Parties' proposed settlement Class.

## I.    The Requirements for a Class Under Rule 23(b)(3) Have Been Satisfied.

In addition to meeting the requirements of Rule 23(a), a class action must also satisfy the requirements of one of the subdivisions of Rule 23(b). Certification is appropriate under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3). The Parties' proposed settlement Class meets this standard.

### i.    Predominance.

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy.

The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem*, 521 U.S. at 623. Cohesion justifies adjudication of numerous claims

through the representative class mechanism. *Id.* "Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* The predominance inquiry must focus on common questions that can be proved through evidence common to the class. *Id.*

In its recent decision in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Supreme Court elaborated on the standard for satisfying Rule 23(b)(3). The Court noted that the predominance inquiry "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case." *Id.* at 1045. The Court explained the differences between the two sorts of questions, noting that "[a]n individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* The Court further explained that "the predominance inquiry asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* When a court determines that "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.*; *see also Bridges v. Absolute Lawn Care LA, LLC*, No. CV 16-448, 2016 WL 6440326, at *10 (E.D. La. Nov. 1, 2016).

Here, the issues related to class-wide liability predominate over any individualized issues. Amin alleged NES's policies affected the claims of the Class Members. Thus, while there may be some variations between individual Class Member's claims (e.g., the amount of damanges), common questions of law and fact predominate over any factual variations in the application of the compensation policies to the individual Class Members.

###### ii.　　Superiority.

The Court must also consider if a class action is superior to individual suits. *Amchem*, 521 U.S. at 615. "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617.

Judicial economy and efficiency, as well as consistency of judgments would be achieved through the certification of the settlement Class in this matter. The alternative is potentially dozens of individual lawsuits, piecemeal litigation, and inconsistent adjudications. "Requiring the class members to bring separate lawsuits would waste judicial resources, limit judicial access to the courts, and create a problem of inconsistent judgments." *Hoffman Elec., Inc. v. Emerson Elec. Co.*, 754 F. Supp. 1070, 1079 (W.D. Pa. 1991); *see also Amchem*, 521 U.S. at 617 (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all'"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (noting that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs).

"[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification." *Powers v. Hamilton County Public Defender Commission*, 560 F.3d 592, 619 (6th Cir. 2007). Under these circumstances, case-by-case resolution of the Class Members' individual claims "would constitute an uneconomical use of judicial resources as well as an inefficient use of the resources of the parties. *Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 488 (W.D. Tenn. 2011). Moreover, requiring individual lawsuits would also raise the possibility that because of the relatively small individual recovery, many potential plaintiffs may not even bring their claims. *Id.* "A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

The Parties' Agreement provides Class Members with an ability to obtain prompt, predictable, and certain relief, whereas individual litigation carries with it great uncertainty, risk, and costs and provides no guarantee that any injured Class Member will obtain necessary and timely relief at the conclusion of the litigation process. The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims.

**4.    THE COURT SHOULD FINALLY APPROVE THE ATTORNEY FEE AND COST AWARD.**

Amin's counsel seeks final approval of the agreed-upon Attorney Fee Award (40% of the Gross Settlement Amount, or $318,000.00) and Cost Award ($10,000.00). Doc. 6-1 at §§ I(3), (12). NES does not to oppose these requests.

Class Counsel's requested fee of 40% of the settlement fund is fair and reasonable in terms of both the incredible results achieved, but also because of the substantial risks involved in litigating the underlying claims. In defining a reasonable fee, the Court should mimic the marketplace for cases involving a significant contingent risk such as this one.  Because our legal system relies on private litigants to enforce substantive provisions of law in class actions, attorneys providing these substantial benefits should be paid an award equal to the amount negotiated in private bargaining that takes place in the legal marketplace. *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338, *rehg. denied*, 446 U.S. 947 (1980). "When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set…The judge, in other words, is trying to mimic the market in legal services."  *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).

A percentage of the class recovery provides a credible measure of the market value of the legal services provided. *In re Prudential-Bache Energy Income P'ship Secs. Litig.,* No. MDL 888, 1994 WL 150742, at *1 (E.D. La. Apr.13, 1994) (a percentage fee award is "intended to approximate the market-what private counsel ordinarily would charge in a contingent fee contract."). The Fifth Circuit has noted,

the "customary contingency" for this type of litigation is "35 to 40 percent." *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001); *see, e.g Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (approving 40% fee in settlement for workers allegedly misclassified as independent contractors); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (approving 40% fee in FLSA settlement); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%); *Quintanilla v. A & R Demolition Inc.*, No. CIV.A. H-04-1965, 2008 WL 9410399, at *8 (S.D. Tex. May 7, 2008) (approving 40% contingency fee award in FLSA collective action settlement).

Thus, the requested fee of 40% of the Gross Settlement Amount is in line with the typical award in common fund cases in this Circuit where counsel has undertaken complex, risky and time-consuming litigation on a contingent basis. Because the requested and negotiated fee is consistent with the market for similar services, the Court should finally approve Class Counsel's requested Fee Award. *See Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738, n.30 (1980) (the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees).

In accordance with the terms of the Settlement, Class Counsel also seeks reimbursement of expenses up to $10,000.00 to cover costs associated with legal research, discovery, hearings, settlement conferences, court fees, mailing, and postage. These expenses are reasonable given the full scope of this litigation to date. Moreover, the expenses incurred are reasonable in relation to the total value of the Settlement and should be awarded. *Klein v. O'Neal,* 705 F.Supp.2d 632, 682 (N.D. Tex. 2010); *In re*

*Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to represent the class).

5.    **THE COURT SHOULD FINALLY APPROVE THE INCENTIVE AWARD TO AMIN.**

The proposed Incentive Payment of $5,000.00 to Amin is intended to recognize his initiative and efforts on behalf of the Putative Class Members. The important contribution of the Amin is well noted. He agreed to put his name on a federal complaint and participated in the investigation and prosecution of this matter. Thus, a total of $5,000.00 will be deducted from the Gross Settlement Amount.

The modest amount of the requested payment is eminently reasonable. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009). *See also* Herr, *Manual for Complex Litigation*, §30.42 (West Group 2001) (noting that such awards "may sometimes be warranted for time spent meeting with class members or responding to discovery"). As such, final approval should be given to the enhancement award preliminarily approved by this Court.

6.    **THE COURT SHOULD FINALLY APPROVE PAYMENT TO SIMPLURIS.**

The Court approved and appointed Simpluris as the Settlement Administrator on September 21, 2022. *See* Doc. 7. Simpluris was, among other things, responsible for verifying the addresses of members of the Settlement Class, mailing the Notice Documents to members of the Settlement Class, calculating the estimated settlement payments to which members of the Settlement Class may be entitled, receiving any objections to the Settlement and requests to opt-out of the Settlement, and responding to inquiries from members of the Settlement Class. In addition, to the extent the Settlement is given final approval, Simpluris will further be responsible for, among other things, distributing the payments provided for herein, reporting the taxes and withholdings applicable to such

payments, and performing such other duties as the parties may mutually direct or as are specified herein.  Accordingly, the Parties respectfully request the Court approve a payment of $10,000.00 to Simpluris for the services performed, and to be performed, by Simpluris in this case. This amount is reasonable and well-deserved.

7.    CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request the Court issue an order: (i) finally finding the terms of the Settlement Agreement to be adequate, fair, and reasonable and in the best interests of the Settlement Class Members; (ii) finally certifying, pursuant to Fed. R. Civ. P. 23 and the FLSA, the Settlement Class for purposes of settlement only; (iii) finally appointing Amin as "Class Representative", who together with Class Counsel, shall be authorized to act on behalf of the Settlement Class Members with respect to the claims at issue and the terms of the Settlement Agreement and approving a $5,000.00 service award; (iv) appointing Class Counsel as counsel for the Settlement Classes pursuant to Fed. R. Civ. P. 23(g) and awarding Class Counsel 40% of the Gross Settlement Amount in attorneys' fees and $10,000.00 in Costs; (v) awarding Simpluris $10,000.00 in expenses for services performed as the Settlement Administrator; and (vi) awarding $9,000.00 as a PAGA Payment.

Respectfully submitted,

By: /s/ Carl A. Fitz
**Michael A. Josephson**
State Bar No. 24014780
Fed. Id. 27157
**Andrew W. Dunlap**
State Bar No. 24078444
Fed. Id. 1093163
**Carl A. Fitz**
State Bar No. 24105863
Fed. Id. 3158237
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone

713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

Richard J. (Rex) Burch
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

This motion is unopposed.

*/s/ Carl A. Fitz*
_____
Carl A. Fitz

## CERTIFICATE OF SERVICE

I served this document on all parties via the Court's ECF system.

*/s/ Carl A. Fitz*
_____
Carl A. Fitz